# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## Bid Protest

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

GOVCIO, LLC,

    Plaintiff,

v.

THE UNITED STATES,

    Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Case No. 23-906 C

## COMPLAINT

GovCIO, LLC ("GovCIO"), for its complaint against the United States, states as follows:

## NATURE OF THE ACTION

1. This is a pre-award bid protest action seeking injunctive and declaratory relief against the Department of Veterans Affairs ("VA") in connection with Amendments 2 and 4 of Request for Proposals No. 36C10B-23-R0011 ("RFP"). The RFP is for the Transformation Twenty-One Total Technology Next Generation 2 ("T4NG2") multiple-award, indefinite-delivery, indefinite-quantity ("IDIQ") contract solution.

2. The RFP, as amended, impermissibly establishes a separate and unequal scoring methodology for certain Relevant Experience Projects ("REPs") depending on who performed the project rather than the relative experience demonstrated in each REP, and does this without creating two separate award pools or tracks.

3. Amendment 2 created an unfair and unequal scoring system for protégé REPs when the offeror is a mentor-protégé joint venture established under 13 C.F.R. § 125.9, giving protégé REPs more points despite performing smaller and less relevant contracts. The VA does not have a

reasonable basis to assign more points or otherwise conduct a more favorable qualitative evaluation of REPs based on the socio-economic status of the company performing the project, much less favor such REPs over larger REPs showing a far greater depth and breadth of experience. Offerors with objectively inferior experience will receive more points than those with greater experience.

4. Amendment 4 introduced the concept of evaluating service-disabled, veteran-owned small business ("SDVOSBs") under a different point-scoring system compared to non-SDVOSBs, but two scoring systems to assess relative experience are only permissible if the RFP establishes two separate tracks: one for SDVOSB offerors and a second for non-SDVOSBs.[1] Since the RFP maintains a single track with only a reserve for SDVOSBs, offerors are not competing on a common basis under the two scoring systems.

5. To eliminate the dual and unequal scoring systems, the VA should rescind the amendments and establish two tracks (SDVOSB and non-SDVOSB/full-and-open) so that all offerors can compete on a fair and level playing field in their respective tracks.

## PARTIES

6. GovCIO is a federal contractor based in Fairfax, Virginia. GovCIO is the incumbent contractor under the VA's initial T4NG program.

7. The VA is an executive agency of the United States and the contracting agency responsible for the RFP and its amendments.

---

[1] Prior to Amendment 4, the RFP satisfied the VA's obligation under the Veterans First Contracting Program to give preference to SDVOSBs/VOSBs by establishing an award reserve limited to SDVOSBs/VOSBs in this full-and-open competition. *See* VAAR 819.7001; 38 U.S.C. § 8128(a). After establishing a reserve, and the evaluation factor authorized by VAAR 852.215-70, no further preferences, such as when evaluating experience, is authorized. *See generally* VAAR 819.5 and 819.7.

## JURISDICTION AND STANDING

8. The Court has jurisdiction over this bid protest action pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996. *See* 28 U.S.C. § 1491(b)(1).

9. GovCIO timely preserved the objections raised in this action by first filing an agency-level protest on May 19, 2023 objecting to Amendment 2.

10. On May 25, 2023, the VA issued Amendment 4, which did not remedy GovCIO's agency-level protest and thus constituted "initial adverse agency action" on the agency-level protest.

11. On June 5, 2023, GovCIO timely protested Amendments 2 and 4 with the Government Accountability Office ("GAO"). *See* 4 C.F.R. § 21.2(a)(3) (requiring GovCIO to file a protest with the GAO "within 10 days of actual or constructive knowledge of initial adverse agency action" on its agency-level protest).

12. On June 13, 2023, VCH Partners, LLC ("VCH") filed a bid protest in the United States Court of Federal Claims, docketed as Case No. 23-0891C-MBH. Since VCH's protest raised the same matter (though different issues) involved in GovCIO's protest with the GAO, the GAO lost jurisdiction over GovCIO's protest, thus requiring GovCIO to bring its protest to this Court. *See* 4 C.F.R. § 21.11(b).

13. GovCIO is an interested party to protest because it is an actual offeror whose direct economic interest is adversely affected by the RFP's separate and unequal scoring system.

## STATEMENT OF FACTS

**A. The T4NG2 RFP.**

14. On March 14, 2023, the VA issued the RFP. The T4NG2 RFP is a large, multiple-award IDIQ contract solution for various information technology services for the VA valued in

excess of $60 billion.

15. The VA intends to award up to 30 contracts to the highest rated offerors with a fair and reasonable price. *See* RFP at 158.

16. The RFP reserves the first 15 contract awards for SDVOSB offerors, but does not create a maximum for SDVOSB offerors, and does not create a minimum for non-SDVOSB offerors. As a non-SDVOSB offeror, GovCIO is competing for one of the non-reserve awards.

17. The RFP requires offerors to submit a self-scoring worksheet as part of their proposal.

18. Awards will be determined based on the total number of points claimed by each offeror across various categories. Points are largely driven by each offeror's relevant experience as reflected in up to ten REPs that each offeror may submit.

19. Other categories eligible for points include past performance, small business participation commitments, certifications, and veteran employment.

**B. The T4NG2 Protests and RFP Amendments.**

20. On April 17, 2023, GovCIO timely submitted its proposal in response to the RFP.

21. On April 21, 2023, Booz Allen Hamilton Inc. ("BAH") filed a protest with the GAO, docketed as B-421613.2. BAH's protest challenges many aspects of the RFP, including that the self-scoring framework—specifically for REPs, system and certifications, and past performance—prevented offerors from competing on a common basis and disadvantaged large business offerors.

22. On April 21, 2023, the Court of Federal Claims issued a decision in *SH Synergy, LLC v. United States*, Case Nos. 22-cv-1466, 22-cv-1468, 2023 WL 3144150 (Fed. Cl. Apr. 21, 2023), interpreting 13 C.F.R. § 128(e). In that case, two mentor-protégé joint ventures challenged

the solicitation for the General Services Administration's ("GSA") Polaris contract. The protesters argued that the solicitation violated 13 C.F.R. § 125.8(e) by applying the same evaluation criteria for protégé REPs as those of all other offerors. *See id.* at *40-52. The Court interpreted Section 125.8(e) to require "agencies to measure the individual capabilities of protégé members of mentor-protégé JVs using alternative evaluation criteria relative to offerors generally," and held that the Polaris solicitation violated Section 125.8(e) by not providing separate evaluation criteria for REPs of protégé offerors. *Id.* at *18-19.

23. On May 11, 2023, the VA issued Amendment 2 to incorporate six changes to the RFP. The first two changes consisted of the following:

> (1) Adjust point values for REPs from Protégés within a Mentor-Protégé Joint Venture as the result of a recent Court of Federal Claims decision;
> (2) Specify the definition of an employed Veteran to be consistent with 38 U.S.C. § 8129(a), wherein there is preference to Offerors that employ Veterans on a full-time basis

24. In RFP Section L.12.3, Relevant Experience Project Values, Amendment 2 contained the following revisions:

NOTE: There are different scoring values under this section associated with REPs from the Protégé within a Mentor Protégé Joint Venture. Within the T4NG2 Self Scoring Worksheet, a submission below $5M (or below $1M for Protégé REPs) will not receive extra points.

Points associated with REP values are as follows:

| REP Value | Points Associated |
|---|---|
| REP < $5M | 0 |
| $5M ≤ REP < $10M | 10 |
| $10M ≤ REP < $30M | 20 |
| REP ≥ $30M | 30 |
| Protégé - REP < $1M | 0 |
| Protégé - $1M ≤ REP < $5M | 10 |
| Protégé - $5M ≤ REP < $10M | 20 |
| Protégé - REP ≥ $10M | 30 |

25.     Under this amendment, protégé REPs will receive the same number of points despite having a substantially smaller dollar value than non-protégé REPs. Protégé REPs worth $10 million or more are eligible for 30 points, while all other offerors' REPs must be worth at least $30 million to receive the same 30 points. Thus, the amendment expressly favors REPs with additional points despite demonstrating less experience.

26.     In RFP Section L.12.6, Breadth of Relevant Experience Projects within Multiple Main Functional Areas, Amendment 2 created the following new point system, again in favor of protégé REPs:

NOTE: There are different scoring values under this section associated with REPs from the Protégé within a Mentor Protégé Joint Venture.

| Other than Protégés | | Protégés | |
|---|---|---|---|
| Number of Main Functional Areas | Points Associated | Number of Main Functional Areas | Points Associated |
| 1 | 30 | 1 | 30 |
| 2 | 60 | 2 | 120 |
| 3 | 90 | 3 | 180 |
| 4 | 120 | 4 or more | 240 |
| 5 | 150 | | |
| 6 | 180 | | |
| 7 | 210 | | |
| 8 or more | 240 | | |
| Not Applicable | 0 | | |

27.     These changes entitled protégés to receive up to twice as many points for REPs that demonstrate experience in the same number of main functional areas as non-protégé REPs. Protégé REPs with experience in four or more of the main functional areas will earn the maximum of 240

- 6 -

points, while non-protégé REPs must demonstrate experience in eight or more of the main functional areas in order to receive the maximum of 240 points.

28. By creating two uneven scoring systems for two classes of offerors—one for protégé REPs and the other for non-protégé REPs—the VA is awarding more relevant experience credit to offerors with objectively less experience.

29. Amendment 2 did not explain why affording preferential treatment to certain REPs merely because they come from one member of a mentor-protégé joint venture is consistent with the VA's minimum needs or otherwise a reasonable reflection of the agency's priorities

30. It is not rational or fair to create an evaluation system that makes more points available to an offeror merely because it is a joint venture and one of its members has less experience.

31. The VA's announcement accompanying Amendment 2 referenced the recent decision of this Court in *SH Synergy* interpreting 13 C.F.R. § 125.8(e) as the reason for creating an uneven scoring system.

32. The original RFP, however, already complied with Section 125.8(e) because it required only one REP from the protégé, while allowing the other nine to come from the mentor. *See* RFP § L.12.1.1 at 139 ("In the event the Offeror is a Joint Venture established in accordance with SBA's Mentor-Protege Program, the first four REPs must be projects that have been performed by the Joint Venture. If the Joint Venture does not have four relevant experiences, then it must include at least one REP performed by the Mentor and one by the Protégé.").

33. Thus, the RFP did not require protégés to meet the same criteria applicable to other offerors in order to be considered for award.

34. Since the RFP already set a different standard for protégés, and the VA was not a party to *SH Synergy*, there was no need for the VA to amend the RFP in response to the Court's decision.

35. On May 19, 2023, GovCIO timely filed an agency-level protest challenging Amendment 2's separate and unequal point values for protégé REPs. GovCIO alleged that the separate point value scheme provided impermissible preferential treatment of protégé offerors and unlawfully created an uneven playing field disadvantaging non-protégé offerors.

36. GovCIO argued that the VA should create multiple tracks or pools so that the VA could evaluate similarly situated offerors on a common basis. GovCIO also disputed the applicability of the *SH Synergy* decision and determination by the VA to re-open the procurement to address the Court's decision.

37. On May 23, 2023, Blue Sky Thinking, LLC ("BST") filed a protest with the GAO in connection with the RFP, docketed as B-421613.4. BST alleged that in issuing Amendment 2, the VA failed to comply 13 C.F.R. § 128.402(f), which applies to certified SDVOSB joint ventures and contains essentially identical language as 13 C.F.R. § 125.8(e), which the Court interpreted in *SH Synergy*. BST wanted the VA to extend the unequal scoring system for mentor-protégé joint ventures established by Amendment 2 to certified SDVOSB joint ventures.

38. On May 25, 2023, the VA issued Amendment 4. The amendment made two changes, both of which appear to be in response to the GovCIO agency-level protest and the BST protest with the GAO.

39. First, as requested by BST, the VA extended the preferential treatment and different scoring system afforded to protégé REPs under Amendment 2 to REPs from certified SDVOSBs

established under 13 C.F.R. § 128.402(f). This appears to have resolved the BST protest, since BST withdrew its protest several days later on May 31, 2023.

40. Second, the VA attempted to limit the impact of the unequal scoring system by applying the favorable joint venture scoring only when making the first 15 reserve awards.

41. Specifically, the VA is now requiring all joint venture offerors (both mentor-protégé and non-mentor-protégé joint ventures) to prepare two point proposals, one showing their Joint Venture Score and the other showing their Standard Score.

42. Amendment 4 provides that the Joint Venture Score will only be used for determining the 15 reserve awards, at which point the remaining proposals will be re-ranked according to their Standard Score:

> The Joint Venture Scoring will be effective until such time that the reserves, as outlined in Section M.1.1., have been satisfied. Once reserve awards (i.e., 15 SDVOSBs, one SDVOSB/WOSB and one SDVOSB/HUBZone) have been identified to be in the Top 30, then all REPs from all Offerors will be evaluated utilizing the Standard Scoring.

43. Amendment 4 also updated Section M.1.1, Evaluation Process, to reflect these changes, stating that Joint Venture Scoring "will be utilized until such time that each type of reserve award (i.e. 15 SDVOSBs, one SDVOSB/WOSB and one SDVOSB/HUBZone) has been identified to be in the Top 30, after which all self-scores will be re-sorted utilizing solely the Standard Scoring."

44. Applying the Joint Venture Scoring only to the 15 reserve awards only partially mitigates the prejudicial impact of the RFP's unequal scoring.

45. There was no reason for the VA to create two scoring systems in the first place unless it also creates two tracks, one set-aside for SDVOSBs and the other for non-SDVOSBs/full-and-open.

46. The *SH Synergy* decision does not apply to the VA and the new scoring system is not a reflection of the VA's actual needs or reasonable judgment as to the relative value of proposals in a single-track environment (with only a reserve).

47. The VA does not, for example, value less experience over more experience, yet the RFP, as amended, rewards inferior experience.

48. The VA made the changes in Amendment 2, and later Amendment 4, because it incorrectly believed that the *SH Synergy* decision required changes to the RFP, not because the VA's needs or values with respect to experience changed.

49. As stated above, the improper scoring system will determine the make-up of the 15 reserve awards, as well as impact which REPs offerors use, which in turn will impact GovCIO's relative ranking and therefore competitive position. Since every point will count in this highly competitive acquisition, any improper evaluation scheme that favors certain offerors over GovCIO will prejudice GovCIO's chances for award.

## COUNT I

**(The RFP, As Amended, Is Arbitrary, Capricious,
an Abuse of Discretion, and Contrary to Law)**

50. GovCIO incorporates the allegations in Paragraphs 1-49.

51. Agencies are required to treat all prospective offerors fairly and structure a competition so that all offerors start on a level playing field. 48 C.F.R. § 3.101 requires agencies to conduct procurements "with complete impartiality and with preferential treatment for none." The government must also conduct procurements "with integrity, fairness, and openness." 48 C.F.R. § 1.102.

52. The RFP, as amended, contains admittedly "different scoring values" for REPs depending on who performed them. *See* RFP at 143-44, 146-47. The different scoring values are

not based on any increased relative value of the protégé and SDVOSB concerns' experience to the VA. Since the VA does not reasonably value or need to place more weight on offerors with less experience compared to those with greater experience, the RFP is not a reflection of the VA's minimum needs or rational discretion as to the relative value of experience.

53. Providing different values for one type of offeror (i.e., protégé and SDVOSBs in joint ventures) violates procurement law because it provides preferential treatment to joint venture offerors who rely on REPs from their less experienced protégé or SDVOSB members. The RFP already substantially and disproportionately favored mentor-protégé joint ventures by allowing a joint venture to use just one of the four required REPs from its protégé while, at the same time, not creating two tracks, and requiring at least four REPs from all other offerors (including SDVOSBs). *See* RFP at § L.12.1.1 (requiring only one REP from the protégé as a minimum for mentor-protégé joint ventures). The VA has now compounded this preferential treatment by lowering the standard for experience relating to protégé REPs. By definition, "different scoring values" available only to a certain type of offeror means that the RFP singles out certain offerors for preferential treatment—giving more points for demonstrating less experience than offerors like GovCIO.

54. Applying the Joint Venture Scoring system only to the first 15 reserve awards does not remedy the competitive harm associated with the unequal, arbitrary, and irrational scoring, because the RFP still provides for awards on a single-track basis (with only a reserve for SDVOSBs). This means that all offerors are competing against each other and therefore two scoring systems, even one ostensibly limited to just the reserves, ultimately affects all offerors.

55. While the VA is required to prioritize contracting opportunities for SDVOSBs, *see* 48 C.F.R. § 819.7001 and 38 U.S.C. § 8128(a), the VA already satisfied such obligation by reserving 15 awards to SDVOSBs. Section L.9 of the RFP also addresses the evaluation preference

in 48 C.F.R. § 852.215-70. Nothing permitted the VA to give preferential treatment to SDVOSB joint ventures beyond these authorities when evaluating such things as experience and capabilities.

56. Outside of the reserve, the Competition in Contracting Act's full-and-open competition requirements apply, and all offerors must be able to compete on a fair and even playing field. *See* 48 C.F.R. § 3.101-1 ("Government business shall be conducted in a manner above reproach and, except as authorized by statute or regulation, with complete impartiality and with preferential treatment for none.").

57. Amendments 2 and 4 go beyond any preference the VA is required to give SDVOSBs by establishing a scoring system in which only certain REPs can obtain maximum points—not because of any inherent technical advantage that a joint venture offers the VA or because those REPs have greater value, but simply due to its business type and, more particularly, status as a protégé or SDVOSB member of a certified joint venture.

58. Assigning points on such a preferential basis for purposes of selecting the 15 SDVOSB reserve awards will have a direct adverse impact on the relative ranking of the offerors competing for the remaining 15 open awards. This problem would not exist, however, if the VA created two tracks to go along with the new Joint Venture Scoring and Standard Scoring, since the two scoring systems would not apply to or affect offerors competing in a different track and therefore would ensure that all offerors are competing within their respective track on a fair and common basis.

59. The VA did not explain the rationale for these changes other than its reference in Amendment 2 to a recent Court of Federal Claims decision. That decision, *SH Synergy*, appears to have interpreted 13 C.F.R. § 125.8(e) as requiring agencies to "measure" protégé experience differently than non-protégé offerors.

60.     But the Small Business Administration ("SBA") regulation at issue in *SH Synergy* states only that an agency cannot require a protégé to "meet the same evaluation or responsibility criteria" as other offerors generally. 13 C.F.R. § 125.8(e).

61.     The VA's creation of a separate scoring system for protégé and certain SDVOSB experience is not supported by statute or the regulation's history. Sections 125.8(e) and 128.402(f) do not permit an agency to provide protégé or SDVOSB REPs with *qualitatively superior* points for demonstrating an *objectively inferior* level of experience compared to non-protégé REPs.

62.     The amended Section L.12.3 entitles a protégé in a mentor-protégé joint venture or SDVOSB member of a VetCert certified SDVOSB joint venture with a REP showing experience on a contract worth only $10 million to earn the full 30 points. While this Joint Venture Scoring system applies for purposes of the reserve awards, it places disproportionate value on inferior experience. All non-joint venture offerors must demonstrate *three times as much experience* to earn the same number of points. *See* RFP at 144. There is no rational basis to elevate joint venture offerors by giving them more points for less experience.

63.     The amended Section L.12.6 similarly assigns twice as many points to the same joint ventures for demonstrating the same number of functional areas as REPs from non-joint ventures, while assigning the same number of points to certain joint venture REPs demonstrating half as much breadth and depth of experience. *See id.* at 146-47. It is objectively unfair and irrational to reward certain joint ventures with twice as many points for demonstrating half as much breadth and depth of experience as non-joint venture REPs, even though the unequal points are applied only for purposes of determining the reserve awards.

64. These changes, without creating two separate tracks to align with each new scoring system, are irrational and contrary to SBA regulation and procurement law that requires agencies to evaluate all offerors on a level playing field and prohibits agencies from giving preferential treatment to certain offerors.

65. Since the VA values experience, as the RFP evaluation factors indicate, a rational scoring system would assign more points for more experience, not less, and order all offerors according to their relative ranking across a single, even scoring system.

66. To justify the two scoring systems created by the amendments, the VA must create two tracks, one for SDVOSB offerors and the other for non-SDVOSBs/full-and-open, so that offerors competing within the same track are competing on a common basis.

## **PRAYER FOR RELIEF**

WHEREFORE, GovCIO requests judgment in its favor and an order:

A. Declaring the RFP, as amended, arbitrary, capricious, an abuse of discretion, and contrary to law;

B. Permanently enjoining the VA from awarding any contracts under the current version of the RFP;

C. Directing the VA to amend the RFP in a manner consistent with its decision in this case and to accept revised proposals; and

D. Granting such other and further relief as the Court deems just and proper.

Dated: June 15, 2023

Respectfully submitted,

VENABLE LLP

/s/ James Y. Boland
James Y. Boland
1850 Towers Crescent Plaza, Suite 400
Tysons, Virginia 22182
(703) 760-1997 (telephone)
(703) 821-8949 (facsimile)
jyboland@venable.com

*Counsel for GovCIO, LLC*

Of counsel:

Kyle T. McCollum
600 Massachusetts Avenue, NW
Washington, DC 20001
(202) 344-4278 (telephone)
(202) 344-8300 (facsimile)
mtfrancel@venable.com

Emily R. Marcy
1850 Towers Crescent Plaza, Suite 400
Tysons, Virginia 22182
(703) 760-1613 (telephone)
(703) 821-8949 (facsimile)
ermarcy@venable.com